UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

LEV PARNAS, et al.,
                     Defendants.

19-CR-725 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

      The Court has received the attached letter from the New York Times Company requesting that certain materials be unsealed. The parties shall file any response to this letter by October 23, 2023.

      SO ORDERED.

Dated: October 2, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge



The New York Times Company

David E. McCraw
Senior Vice President
& Deputy General
Counsel

T 212 556 4031
mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

September 22, 2023

**VIA FEDERAL EXPRESS**

The Honorable J. Paul Oetken
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *United States v. Parnas*, No.19-cr-00725 (JPO)

Dear Judge Oetken:

The New York Times Company ("The Times") respectfully submits this letter to seek an order unsealing materials related to searches conducted in the above-referenced matter. Specifically, The Times requests that the court unseal copies of the search warrants, search warrant applications, supporting affidavits, court orders, and returns on executed warrants related to the seizures and searches of the premises, documents, electronic devices, and email and cloud accounts belonging to Lev Parnas and Igor Fruman ("the Records").[1]

We make this request pursuant to the public's right of access to judicial records, grounded in both the federal common law and the First Amendment. If Your Honor prefers, we are prepared to move by formal motion to intervene and seek the unsealing.

---

[1] Decl. of Gerald B. Lefcourt, Esq., Ex. D, Chart of Search Warrant Applications, ECF No. 160-4 (describing, in part, search warrant applications submitted in this proceeding).

1

The First Amendment and common law rights of access to judicial records and proceedings are well-settled, based in our longstanding national commitment to democratic governance. "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014). "[P]ublic monitoring of the judicial system fosters important values of 'quality, honesty, and respect for our legal system.'" *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9-10 (1st Cir. 1998) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 407 (1st Cir. 1987)). *See also Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 606 (1982).

Mr. Parnas consents to the unsealing. Mr. Fruman takes no position on The Times's motion at this time. The Government states that it reserves the right to oppose the unsealing, in full or in part, pending review of this motion.

1. The Common Law Right of Access Requires Unsealing

In determining whether the presumptive common law right of access attaches to particular documents, "court[s] must first conclude that the documents at issue are indeed 'judicial documents,'" then "determine the weight of that presumption" of access, and finally "balance [any] competing considerations against it." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). That analysis is the same in criminal cases, including for media intervenors. *See Gannett Media Corp. v. United States*, No. 22-2160, 2022 WL 17818626, at *2-3 (2d Cir. 2022) (finding justifications for redactions of court filings insufficient under common law presumption of access).

The Second Circuit and other federal appellate courts have held that the common law right of access applies to search warrant materials, particularly in concluded matters. *See, e.g., In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (affirming unsealing search warrant affidavit in concluded case based on common law right of access); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017);

*United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011).

The presumption of access to warrant materials in concluded cases is entitled to significant weight, as courts within this Circuit have explained. Such materials "go to the heart of the judicial function": they inform the court's decision to grant a search warrant, which in turn affects individuals' constitutional rights. *In re Search Warrant*, No. 16-mc-00464, 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016); *see also United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583-84 (S.D.N.Y. 2009); *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208, 2008 WL 5667021, at *3 (N.D.N.Y. July 14, 2008) (documents filed in connection with a search warrant "adjudicated the right of individuals under the Fourth Amendment not to be subjected to government intrusion absent a judicial determination of sufficient cause," a right "held among this country's highest values"). The result is that the presumption of access to search warrant materials carries "the maximum possible weight." *In re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *3.

The public interest in transparency is particularly salient in this matter, given Mr. Parnas and Mr. Fruman are both public figures in their own rights and have long been linked to Rudolph Giuliani, a prominent counselor to former President Donald Trump.[2] Mr. Parnas and Mr. Fruman were both charged with "conspir[ing] to circumvent the federal laws against foreign influence" and "engaging in a scheme to funnel foreign money to [state and federal] candidates" in order to "buy potential influence." Indictment 2, ECF No. 1. The proceedings have since concluded for both men.[3] The nature and severity of these crimes targeting core democratic processes, along with the defendants' proximity to powerful government figures, speaks to the important public interest in

---

[2] Colin Moynihan, *Ex-Giuliani Associate Is Sentenced to Prison in Campaign Finance Scheme*, N.Y. Times (June 29, 2022), https://www.nytimes.com/2022/06/29/nyregion/lev-parnas-sentenced.html; Colin Moynihan, *Igor Fruman, Former Giuliani Associate, Is Sentenced to One Year in Prison*, N.Y. Times (Jan. 21, 2022), https://www.nytimes.com/2022/01/21/nyregion/igor-fruman-sentencing.html.

[3] Mr. Fruman pleaded guilty to all charges. *See* Judgment in a Crim. Case, ECF No. 298. Mr. Parnas was found guilty on six counts, and pleaded guilty to the other charge. *See* Judgment in a Crim. Case, ECF No. 339.

unsealing these documents. In such a proceeding, transparency and democratic oversight are essential.

Given this strong presumption for common law access, the Records must be released unless countervailing interests require withholding. *Lugosch*, 435 F.3d at 120. Countervailing interests that may overcome the presumption of access include "the danger of impairing law enforcement or judicial efficiency" or "the privacy interests of those resisting disclosure." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

Here, "the danger of impairing law enforcement or judicial efficiency" is nonexistent: the investigation and proceeding have concluded and both defendants have either pleaded or been found guilty, eliminating any risk of tipping off defendants, impeding investigations, or influencing ongoing proceedings. *See In re Application of Newsday, Inc.*, 895 F.2d at 79 (affirming release of search warrant affidavit where "warrant ha[d] been executed" and proceeding concluded, leading even "the government [to] admit[] that its need for secrecy [was] over"). Whatever privacy interests Mr. Parnas or Mr. Fruman may have do not outweigh the strong presumption of access, given that the Records deal with materials seized as part of a public prosecution that ended in convictions. *See Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (generalized privacy interests insufficient to overcome right of access). To the extent these interests are implicated, targeted redaction, rather than wholesale closure, is the appropriate remedy. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

In deference to the legitimate privacy interests of third parties, The Times is not seeking the names of unindicted third parties who remain private figures, nor is it seeking discussions of uncharged conduct of such private figures. *See In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (highlighting privacy interests of "innocent third parties"). But we ask that the Court order the unsealing of the uncharged conduct of Mr. Parnas, who has consented to the unsealing. Similarly, we seek the unsealing of the uncharged conduct of Rudolph Giuliani. In a related proceeding before

Your Honor to unseal search warrant materials related to his own investigation, Mr. Giuliani has consented to the unsealing of affidavits in support of a search warrant for his apartment, office, and iCloud account.[4] Mr. Giuliani's consent in his own proceeding undermines the assertion of privacy interests on his behalf here to justify redactions.

As to Mr. Fruman, we believe unsealing of accounts of uncharged conduct is also justified. There has been robust reporting around the links among Mr. Giuliani, Mr. Parnas and Mr. Fruman, particularly as it relates to the Ukraine coercion scandal that led to Mr. Trump's first impeachment.[5] We believe there is significant overlap between the long-public revelations about Mr. Fruman's connections to the affair and the information contained in the Records at issue. Thus, because this information has already been publicized, redaction is both unnecessary and unsupported. Disclosure of uncharged conduct is harmful primarily when it has never been revealed or when the potential to prejudice the proceedings against a defendant, interests that are inapposite in this concluded proceeding. *United States v. Leonardo*, 129 F. Supp. 2d 240, 244-47 (W.D.N.Y. 2001), *aff'd, United States v. Graham*, 257 F.3d 143 (2d Cir. 2001).

Finally, for the same reasons, we believe that the Court should disclose the identity of Mr. Trump to the extent he appears in the Records, and any accounts of uncharged conduct concerning Mr. Trump is properly subject to unsealing in light of the extensive disclosures about his actions in regard to Ukraine during his impeachment proceedings.

---

[4] The Times is submitting a simultaneous letter seeking the unsealing of search warrant materials in the investigation into Mr. Giuliani. *See In re Search Warrants Executed on April 28, 2021*, 21-mc-425-JPO. The Times obtained Mr. Giuliani's consent to the unsealing of affidavits in support of a search warrant for his apartment, office, and iCloud account via communications with his former counsel in that matter.

[5] *See, e.g.*, Ari Shapiro & Dave Blanchard, *How A Complicated Web Connects 2 Soviet-Born Businessmen With The Impeachment Inquiry*, NPR (Oct. 23, 2019), https://www.npr.org/2019/10/23/771849041/how-a-complicated-web-connects-2-soviet-born-businessmen-with-the-impeachment-in; Steve Inskeep, *Giuliani: The Lawyer At The Center Of The Ukraine Affair, And The Path That Led There*, NPR (Dec. 13, 2019), https://www.npr.org/2019/12/13/787204619/giuliani-the-lawyer-at-the-center-of-the-ukraine-affair-and-the-path-that-led-th ("Congressional testimony has placed Giuliani at the center of the Ukraine affair, with multiple witnesses telling House investigators that he helped spearhead an irregular diplomatic channel between the U.S. and Ukraine.").

### 2. The First Amendment Requires Unsealing

The Records also are subject to a First Amendment right of access, which provides a separate and independent basis for access. To determine whether the qualified First Amendment right of access attaches, courts first determine whether the materials at issue are judicial documents. *Bernstein*, 814 F.3d at 141. Courts then examine whether the First Amendment right attaches based on the Supreme Court's experience and logic analysis. The experience prong looks to whether the records and processes at issue "have historically been open to the press and general public" and the logic prong examines "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Super. Ct. of Calif. (Press-Enterprise II)*, 478 U.S. 1, 8 (1986).

Where the First Amendment right of access attaches, the proceedings and records cannot be kept from the public "unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 13-14 (quoting *Press-Enter. Co. v. Super. Ct. of Calif. (Press-Enterprise I)*, 464 U.S. 501, 510 (1984)). The Second Circuit's "precedents establish[] the public's and the press's qualified First Amendment right . . . to access certain judicial documents." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). That right attaches to a large array of judicial records and gives the public a constitutional right to inspect those records, absent a showing of an overriding public interest that justifies sealing. *See, e.g., Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *United States v. Suarez*, 880 F.2d 626, 630-31 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

Though the Second Circuit has not yet considered the issue, a number of courts have more specifically concluded that a First Amendment right of access attaches specifically to search warrant materials. *See, e.g., In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988); *In re Application of The New York Times Co. for*

6

*Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 94 (D.D.C. 2008); *United States v. Loughner*, 769 F. Supp. 2d 1188, 1193 (D. Ariz. 2011).

For the same reasons set forth above with respect to the common law right, the First Amendment right of access to the Records is not overcome by any countervailing interest. Where the First Amendment applies, sealing can be sustained only if the demanding *Press-Enterprise* standard is met. *Press-Enterprise I*, 464 U.S. at 510. That is a heavier burden than the one imposed by the common law. *Lugosch*, 435 F.3d at 126.

For all of the foregoing reasons, The Times respectfully requests that the Records be made public. Should any party object to unsealing, The Times requests an opportunity to reply and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*[signature]*

David E. McCraw

cc:   All Counsel of Record (by email)
      Mr. Rudolph Giuliani (by Federal Express)